WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Neil Davis, a single man, | No. CV-08-00050-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| Gretchen Spier and John Doe Spier, a married couple, individually and in Ms. Spier's capacity as an employee of the State of Arizona; The State of Arizona; Detective Chris Western and Jane Doe Western, a married couple, individually and in Mr. Western's capacity as an employee of the Casa Grande Police Department; The City of Casa Grande, an incorporated municipality; John Does 1-10, and XYZ political subdivisions or government agencies, | |
| Defendants. | |

Before the court is Defendant Gretchen Spier ("Spier") and Defendant State of Arizona's Motion to Dismiss based on Rules 1, 2, 4, 5, and 6 of the Federal Rules of Civil Procedure. (Doc. # 4.) On December 5, 2007 Plaintiff Neil Davis ("Davis") filed his Complaint in the Superior Court of Arizona seeking compensatory, consequential, and special damages for claims under 42 U.S.C. § 1983 and Arizona tort law. Defendants Chris Western ("Western") and the City of Casa Grande removed the case to this court pursuant to 28 U.S.C. § 1331.

## I. Background

On this motion to dismiss, all well-pleaded facts in the complaint must be accepted as true and all reasonable inferences from those facts must be construed in the light most favorable to Davis. *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001). Davis was charged with credit card theft on or about December 6, 2006. The charges stemmed from an investigation headed by Western, a police officer with the Casa Grande Police Department. Pinal County probation officer Spier learned about the charges and submitted a petition to revoke Davis's probation, which included a request that he be arrested and incarcerated until the revocation hearing. The judge granted her petition, and Davis spent 35 days in jail before the probation violation and the criminal charges were dismissed. According to the Complaint, both Western and Spier knew, or should have known, that Davis could not have committed the charged offense because he was incarcerated at the Pinal County Jail at the time the offense occurred. Davis claims that Western and Spier, in both their official and individual capacities, acted intentionally or with gross negligence, deliberate indifference, recklessness, or negligence, to violate his rights under the Fourth and Fourteenth Amendments to the United States Constitution. He also claims that they committed the torts of false arrest, false imprisonment, and malicious prosecution.[1]

## II. Scope of the Motion

As a preliminary matter, § 1983 provides that any person who deprives another of constitutional rights under color of state law will be liable to the injured party in an action at law. 42 U.S.C. § 1983. Neither a state nor state officials acting in their official capacities can be sued for monetary damages under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that state governments and state officers in their official capacities are not "persons" who can be sued for monetary damages under §

---

[1] Though defendants have attached additional evidentiary documents along with their motion, the court declines to convert the motion into one for summary judgment and excludes the documents from consideration.

- 2 -

1983). Davis's § 1983 claims against the State of Arizona and against Spier in her official capacity are therefore dismissed with prejudice.

The remaining issue presented by this motion is whether Spier is absolutely immune from Davis's federal and state claims against her in her individual capacity. Among the powers and duties that Arizona law provides to probation officers are:

> . . .
>
> 2. Exercise general supervision and observation over persons under suspended sentence, subject to control and direction by the court.
>
> 3. Serve warrants, make arrests and bring persons before the court who are under suspended sentences. The officer has the authority of a peace officer in the performance of the officer's duties.
>
> . . .
>
> 6. Obtain and assemble information concerning the conduct of persons placed under suspended sentence and report the information to the court.
>
> 7. Bring defaulting probationers into court when in the probation officer's judgment the conduct of the probationer justifies the court to revoke suspension of the sentence.
>
> . . . .

A.R.S. § 12-253.

**III. Immunity from § 1983 Claims Under Federal Law**

Spier moves to dismiss the § 1983 claims because she is entitled to absolute immunity for her actions. Two forms of immunity shield state government officials sued in their individual capacities under § 1983. Most officials receive qualified immunity, which shields them from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Absolute immunity, on the other hand, is a complete defense to an action for civil damages and is reserved to those persons "performing a duty functionally comparable to one for which officials were rendered immune at common law." *Swift v. State of California*, 384 F.3d 1184, 1190 (9th Cir. 2004) (quoting *Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir. 2003) (en banc)).

Such persons include judges performing judicial acts, grand jurors acting within the scope of their duties,[2] prosecutors in their roles as advocates,[3] and witnesses testifying in court.[4]

"An official derives the appropriate degree of immunity not from his or her administrative designation but by the function he or she performs." *Swift*, 483 F.3d at 1188 (quoting *Anderson v. Boyd*, 714 F.2d 906, 908 (9th Cir. 1983)). Thus, judges receive only qualified immunity when performing administrative functions. *Forrester v. White*, 484 U.S. 219 (1988). Prosecutors receive only qualified immunity when acting as investigators, *Buckley v. Fitzsimmons*, 509 U.S. 259, 275 (1993), and when swearing to the truth of facts underlying applications for arrest warrants, *Kalina v. Fletcher*, 522 U.S. 118, 129–31 (1997). The Supreme Court has emphasized:

> [T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question. The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. We have been quite sparing in our recognition of absolute immunity, and have refused to extend it any further than its justification would warrant.

*Burns v. Reed*, 500 U.S. 478, 486–87 (1991) (citations and internal quotation marks omitted).

Spier bases her absolute immunity claim on the immunity provided to judges and prosecutors. She argues that absolute judicial immunity bars Davis's claim because it "was the Honorable Stephen F. McCarville of the Pinal County Superior Court (not Spier) who ordered that Davis be arrested and held without bond pending the outcome of his probation violation hearing." (Reply, doc. # 9 at 2.) Davis is not, however, seeking liability for the judge's decision to issue the arrest warrant. Rather, he claims liability for Spier's actions in seeking the arrest warrant and the petition to revoke probation.

---

[2] *See Imbler v. Pachtman*, 424 U.S. 409, 422–23 and n.20 (1976) (discussing the immunity granted to judges and grand jurors at common law).

[3] *Kalina v. Fletcher*, 522 U.S. 118, 125–27 (1997).

[4] *See Burns v. Reed*, 500 U.S. 478, 489–90 (1991) (discussing the immunity granted to witnesses at common law).

- 4 -

1      Spier also argues that her actions should receive judicial immunity because her
2 duties to investigate the charges and petition to revoke Davis's probation are related to the
3 judge's decision to issue the bench warrant. She relies on the reasoning of an Arizona
4 Court of Appeals panel, which stated: "The relationship between the probation officers'
5 investigating/reporting function and the judge's sentencing function supports absolute
6 immunity." *Desilva v. Baker*, 208 Ariz. 597, 603, 96 P.3d 1084, 1090 (Ct. App. 2004).
7 Our circuit rejected that reasoning in *Swift v. State of California*, 384 F.3d at 1190.

8      *Swift* concerned the immunity of parole officers. Parole board members receive
9 quasi-judicial absolute immunity for their decisions "'to grant, deny, or revoke parole'
10 because those functions are 'functionally comparable' to tasks performed by judges." *Id.*
11 at 1189 (quoting *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir. 1981)). The parole
12 officers in *Swift* argued that they should also receive absolute immunity because their acts
13 were related to the parole board's quasi-judicial function. Specifically, they had
14 investigated a suspected parole violation, authorized the arrest of the parolee, and
15 recommend initiation of parole revocation proceedings. The court rejected their argument
16 and concluded that after *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993), "the
17 relation of the action to a judicial proceeding . . . is no longer a relevant standard." *Swift*,
18 483 F.3d at 1190 (citing *Miller*, 335 F.3d at 897). "[W]e must determine not whether an
19 action 'relates to' the decision to grant, deny, or revoke parole . . . but whether an action
20 is taken by an official 'performing a duty functionally comparable to one for which
21 officials were rendered immune at common law.'" *Id.*

22      Similarly in *Beltran v. Santa Clara County*, 491 F.3d 1097 (9th Cir. 2007), *rev'd*
23 *en banc*, 514 F.3d 906 (9th Cir. 2008), social workers argued that they should be afforded
24 absolute immunity for investigating and filing dependency petitions with a court. The
25 original three judge panel had followed precedent and held that the social workers were
26 absolutely immune because their duties had the "requisite connection to the judicial
27 process." 491 F.3d at 1100 (following *Doe v. Lebbos*, 348 F.3d 820, 825 (9th Cir. 2003)).
28 The court vacated the panel's decision and overruled *Lebbos* at rehearing en banc, stating,

- 5 -

1  "Parties to section 1983 suits are generally entitled only to immunities that existed at
2  common law." 514 F.3d at 906.

3  To merit absolute immunity, probation officers' duties to investigate probation
4  violations and petition to revoke probation must be functionally comparable to duties that
5  received absolute immunity at common law. The majority of federal courts have decided
6  that, at least where an arrest warrant is sought, probation officers should not receive
7  absolute immunity for such duties. *Griffin v. Leonard*, 821 F.2d 1124, 1125 (5th Cir.
8  1987); *Ray v. Pickett*, 734 F.2d 370, 374 (8th Cir. 1984); *Galvan v. Garmon*, 710 F.2d
9  214, 215 (5th Cir. 1983); *Callaway v Bell*, No. 6:05-cv-1569-Orl-18DAB, 2006 U.S. Dist.
10 LEXIS 29933 at *9 (M.D. Fla. May 8, 2006); *Gelatt v. County of Broome*, 811 F. Supp.
11 61, 67, 68–69 (N.D.N.Y. 1993).[5] A probation officer who investigates and petitions to
12 revoke probation functions like a police officer, not a judge or a prosecutor acting as an
13 advocate. Unlike a prosecutor initiating a criminal prosecution, a probation officer does
14 not decide whether to commence a judicial proceeding. Rather, the officer merely
15 submits a report containing evidence to the judge, who then decides how to proceed.
16 *Gelatt*, 811 F. Supp. at 68–69. The probation officer's "function in this context is more
17 akin to that of a police officer in deciding whether there is probable cause for an arrest
18 than it is to that of a prosecutor in deciding whether to initiate a prosecution." *Ray*, 734
19 F.2d at 374. *See also Harper v. Jefferies*, 808 F.2d 281, 284 (3d Cir. 1986) (explaining
20 that a probation officer's general responsibilities are "more executive than judicial in
21 nature").

22 Multiple courts, including our circuit in *Swift*, have held the same for parole
23 officers when investigating and petitioning for parole revocation. *Swift*, 384 F.3d at
24 1191–93 ("[R]equesting that the [parole board] initiate revocation proceedings, [is] more

---

[5] The court knows of only two district courts that found absolute immunity appropriate, and both found it significant that the probation officers had not sought pre-hearing arrest warrants. *Gant v. U.S. Prob. Office*, 994 F. Supp 729, 734 (S.D. W. Va. 1998); *Schiff v. Dorsey*, 877 F. Supp. 73, 79 n. 2 (D. Conn. 1994).

- 6 -

1  akin to a police officer seeking an arrest warrant, than to a prosecutor exercising quasi-
2  judicial discretion to initiate criminal proceedings."); *Scotto v. Almenas*, 143 F.3d 105,
3  112–13 (2d Cir. 1998) (same); *Wilson v. Kelkhoff*, 86 F.3d 1438, 1445–46 (7th Cir. 1996)
4  (same); *Mee v. Ortega*, 967 F.2d 423, 427 (10th Cir. 1992) (same).  To hold that
5  probation officers receive absolute immunity because of their proximity to a judge, but
6  parole officers receive only qualified immunity for highly similar functions, would defy
7  the well settled principle that "immunity flows not from the rank or title or 'location
8  within the Government,' but from the nature of the responsibilities of the individual
9  official."  *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985) (citation omitted).
10        According to our circuit's precedent, probation officers do receive absolute
11  immunity for preparing and submitting pre-sentence reports.  *Demoran v. Witt*, 781 F.2d
12  155, 157–58 (9th Cir. 1985).  The primary reason is that the probation officer "engage[s]
13  in impartial fact gathering for the sentencing judge" and to allow liability would "impair
14  the sentencing judge's ability to carry out his judicial duties."  *Id.* at 157.  In contrast,
15  probation officers investigate and petition to revoke probation at their "own initiative and
16  at a different phase of the criminal process less intimately associated with the judiciary
17  [than sentencing]."  *Galvan*, 710 F.2d at 215.  *Accord Scotto*, 143 F.3d at 111–12; *Ray*,
18  734 F.2d at 373 ("The probation officer is not acting as closely with the court as in the
19  presentence report process.").  Unlike sentencing, "[t]he judge authorizing the issuance of
20  a Violation of Probation and an arrest warrant relies on the one-sided account of the
21  probation officer."  *Gelatt*, 811 F. Supp. at 67.  At least where the probation officer
22  requests an arrest warrant, few safeguards protect the probationer from a pre-hearing
23  unjustified deprivation of liberty, and no viable alternative to damages exists to redress
24  that injury once it has occurred.  *Id.*
25        Spier has not met her burden to show that her duties to investigate and petition to
26  revoke probation are functionally comparable to the duties of judges acting in their
27  judicial capacities or prosecutors acting as advocates.  She is entitled to only qualified
28  immunity from Davis's claims against her in her individual capacity under § 1983.

- 7 -

## II. Immunity for State Officials Under State Law

Whether Spier is immune from Davis's Arizona tort law claims is a question of Arizona law. *See Martinez v. California*, 444 U.S. 277, 282 n.5 (1980) ("[W]hen state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law."). Federal courts must follow the decisions of a state's highest court when deciding issues of that state's law. *Harvey's Wagon Wheel, Inc. v. Van Blitter*, 959 F.2d 153, 154 (9th Cir. 1992).

Like the United States Supreme Court, the Arizona Supreme Court has "emphasized that liability of public servants is the rule in Arizona and immunity is the exception." *Fidelity Sec. Life Ins. Co. v. Department of Ins.*, 191 Ariz. 222, 225, 954 P.2d 580, 583 (1998). It has provided judicial immunity to judges acting in their judicial capacities. *Acevedo v. Pima County Adult Prob. Dept.*, 142 Ariz. 319, 321, 690 P.2d 38, 40 (1984) (citing *Ryan v. State*, 134 Ariz. 308, 656 P.2d 597 (1982)). Relying on federal authorities, it has also provided absolute immunity to court officials "who perform functions 'intimately related to', or which amount to 'an integral part of the judicial process.'" *Id.* (*quoting Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir.1980), *and Robichaud v. Ronan*, 351 F.2d 533, 536 (9th Cir. 1965)) (citation omitted). In such cases, the "non-judicial officer performed a function, pursuant to a court directive, which was related to the judicial process." *Id.* at 321, 690 P.2d at 40. Thus, court appointed psychologists, *Lavit v. Superior Court*, 173 Ariz. 96, 99, 839 P.2d 1141, 1144 (Ct. App. 1992), and court appointed guardians ad litem, *Widoff v. Wiens*, 202 Ariz. 383, 386, 45 P.3d 1232, 1235 (Ct. App. 2002), have been accorded absolute immunity for duties they performed pursuant to a court's order in the course of judicial proceedings.

The supreme court addressed the immunity of probation officers for clearly administrative tasks in *Acevedo v. Pima County Adult Probation Deptarment*, 142 Ariz. 319, 690 P.2d 38 (1984), *vacating* 142 Ariz. 360, 690 P.2d 79 (Ct. App. 1983). State probation officers were sued for negligently supervising a probationer who injured the

- 8 -

1  plaintiffs. The court of appeals had reasoned that "the probation officer 'stands in the
2  shoes' of the superior court judge in carrying out the order of the court and is answerable
3  only to the judge." 142 Ariz. at 362, 690 P.2d at 81. It accordingly held that "since the
4  officer's duty to supervise a probationer arises out of a 'judicial proceeding' and is a
5  continuation of that proceeding, his/her activities are protected by . . . absolute judicial
6  immunity." *Id.* at 363, 690 P.2d at 82.

7  The supreme court relied on federal precedent to reject the court of appeals'
8  reasoning and its holding, stating that the precedents did "not support such a broad grant
9  of immunity" to administrative tasks. 142 Ariz. at 321, 690 P.2d at 40. Although it
10 "believe[d] that a probation officer is entitled to absolute protection from suit for actions
11 which are *necessary* to carry out and enforce the conditions of probation imposed by the
12 court," it immediately cautioned:

> We do not agree, however, that all the activities of a probation officer in supervising a probationer are entitled to immunity. Much of the work of a probation officer is administrative and supervisory. Such activities are not part of the judicial function; they are administrative in character . . . . [T]he activities of a probation officer will often not be connected with the performance of a judicial function, and as a consequence not be entitled to immunity.

17 *Id.* at 322, 690 P.2d at 41 (emphasis supplied). Specifically, the court decided that a
18 "probation officer cannot assert for immunity unless the officer is acting pursuant to or in
19 aid of the directions of the court." *Id.* The probation officers had negligently allowed the
20 probationer to violate his conditions of probation, so they acted contrary to the court's
21 order and were not entitled to absolute immunity. *Id.*

22 *Acevedo* is not squarely on point with the facts of this case. That was a claim of
23 negligent supervision; this is a claim of negligent investigation leading to arrest of the
24 probationer. However, the decision in *Acevedo* is strong evidence of how the supreme
25 court would decide this issue. "Where the state's highest court has not decided an issue,
26 the task of the federal courts is to predict how the state court would resolve it."
27 *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986). In so doing, "[w]e
28 do not treat considered dicta from the Supreme Court lightly. Rather, we treat such dicta

- 9 -

with 'due deference,' as it serves as a 'prophecy of what that Court might hold.'" *McCalla v. Royal Maccabees Life Ins. Co.*, 369 F.3d 1128, 1132 (9th Cir. 2004) (citation omitted).

According to *Acevedo*, probation officers are not absolutely immune for their administrative duties. They are absolutely immune only for those acts that are "necessary" to enforce the conditions of probation and "pursuant to or in aid of the directions of the court." 142 Ariz. at 322, 690 P.2d at 41. Although Arizona probation officers are technically subject to the "control and direction" of the court, A.R.S. § 12-253(2), Arizona law evidences that they usually operate under their own discretion. It provides that probation officers "[b]ring defaulting probationers into court when *in the probation officer's judgment* the conduct of the probationer justifies the court to revoke suspension of the sentence." § 12-253(7) (emphasis supplied). The supreme court's holding in *Acevedo* simply indicates that in some situations a probation officer could be investigating or petitioning to revoke probation pursuant to the direction of the court, and in those specific situations would enjoy absolute immunity.

The decision of a panel of the Arizona Court of Appeals in *Adams v. State of Arizona*, 185 Ariz. 440, 916 P.2d 1156 (Ct. App. 1995), supports this conclusion. There, the court had to decide whether social workers are absolutely immune for negligently supervising and investigating prospective adoptive parents. The court noted that the judge did "not specify how the caseworkers should conduct their investigations" and that the social workers had not shown that they "acted pursuant to any specific court order in conducting their investigations or in supervising the children post placement." *Id.* at 444, 916 P.2d at 1160. Therefore, it held that the social workers' "investigative and supervisory functions cannot clearly be characterized as court-ordered so as to justify absolute immunity on that ground." *Id.* at 445, 916 P.2d at 1161. *See also Gelatt*, 811 F. Supp. at 67 (interpreting *Acevedo* to hold "that if the official performed a function at the *direction* of a judge, then there should be absolute immunity . . . [but only qualified immunity] [i]f the function performed is not at the behest or direction of the court").

- 10 -

The specific issue on this motion is whether Spier's activities "are not part of the judicial function," but instead "are administrative in character." *Acevedo*, 142 Ariz. at 322, 690 P.2d at 41. The pleadings in this case do not indicate that the sentencing order or any act of the court thereafter had any specific bearing on Spier's investigation, on her decision to file a petition to revoke Davis's probation, or on her initial decision to seek an arrest warrant. She performed those duties routinely, not pursuant to a specific direction from the court. Although Spier was in a general sense performing duties related to the court's sentencing order, the same can be said for the probation officers in *Acevedo*, to whom the court denied absolute immunity. Here, as in *Acevedo*, Spier allegedly failed to adequately perform routine duties and therefore the supreme court would hold that her acts were administrative in character and are not entitled to absolute immunity.

Spier relies on *Desilva v. Baker*, 208 Ariz. 597, 96 P.3d 1084 (Ct. App. 2004), which holds that her "duty to prepare and file the necessary papers with the court to revoke probation entitles [her] to absolute immunity for that specific conduct." *Id.* at 602, 96 P.3d at 1089. "Applying the functional test," the court decided that "[s]uch functions are similar to the duties of a judge acting in his or her official capacity." *Id.* It discussed federal court decisions that held probation officers absolutely immune for submitting presentence reports, and concluded that petitions to revoke probation should also receive absolute immunity because they are equally as integral to the judicial process. Specifically, it reasoned:

> The relationship between the probation officers' investigating/reporting function and the judge's sentencing function supports absolute immunity. The officers' on-going supervision of probationers to ensure execution of court orders, as well as their duty to investigate and report violations to the court itself, are on behalf of and in aid of the court's judicial function.

*Id.* at 603, 96 P.3d at 1090. The court noted that its decision "is consistent with *Acevedo*, which suggests that if filing a petition to revoke were 'necessary to carry out and enforce the conditions of probation imposed by the court' a probation officer would be entitled to absolute immunity." *Id.* (quoting *Acevedo*, 142 Ariz. at 322, 690 P.2d at 41).

1    The court of appeals' holding that probation officers are always absolutely
2 immune when they file petitions to revoke probation cuts against concluding that the
3 Arizona Supreme Court would hold otherwise. *See Dimidowich*, 803 F.2d at 1482
4 (explaining that federal courts look "for 'guidance' to decisions by intermediate appellate
5 courts of the state."). However, "[b]ecause a federal court must take into account 'all
6 available data,' the decision of a [state] intermediate appellate court is not controlling."
7 *Wilson v. Haria & Gogri Corp.*, 479 F. Supp. 2d 1127, 1135 (E.D. Cal. 2007) (quoting
8 *Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982)). *See also* 19 CHARLES A. WRIGHT,
9 ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 4507, at
10 141 (1996) ("[T]o give state [intermediate] court decisions more binding effect . . . would
11 undermine the ability . . . to ensure that the outcome . . . be substantially the same as it
12 would be if tried in a state court and subjected to that system's appellate process."). State
13 intermediate appellate court decisions "are data which are 'not to be disregarded by a
14 federal court unless it is convinced by other persuasive data that the highest court of the
15 state would decide otherwise.'" *Dimidowich*, 803 F.2d at 1482 (quoting *Estrella*, 682
16 F.2d at 817) (declining to follow a state intermediate court opinion). *See also Hunter v.*
17 *Ayers*, 336 F.3d 1007, 1012–13 (9th Cir. 2003) (same); *Martinez v. Asarco Inc.*, 918 F.2d
18 1467, 1473 (9th Cir. 1990) (same); *Owen v. United States*, 713 F.2d 1461, 1465 (9th Cir.
19 1983) (same); *Wilson*, 479 F. Supp. 2d at 1136–41 (same).

20    The major reason given to accord probation officers absolute immunity for
21 petitions to revoke probation is "[t]he relationship between the probation officers'
22 investigating/reporting function and the judge's sentencing function." *Desilva*, 208 Ariz.
23 at 603, 96 P.3d at 1090. At least as a broad proposition, and on significantly different
24 facts, the Arizona Supreme Court rejected that reasoning in *Acevedo*. It stated, "The
25 Court of Appeals would extend . . . absolute judicial immunity to probation officers
26 supervising probations because the task arises out of a judicial proceeding and is a
27 continuation of that proceeding. The authorities do not support such a broad grant of
28 immunity." 142 Ariz. at 321, 690 P.2d at 40. Rather, "the activities of a probation officer

1 will often not be connected with the performance of a judicial function, and as a
2 consequence not be entitled to immunity." *Id.* The seeming similarity of presentence
3 reports to petitions to revoke probation also fades upon scrutiny. Presentence reports
4 have no effect until judicial action after a full adversarial proceeding. Petitions to revoke
5 probation are ex parte and their relationship to "the judge's sentencing function," *Desilva*,
6 208 Ariz. at 603, 96 P.3d at 1090, is more attenuated. They look more like probation
7 officers' general administrative functions, as most federal courts have held.

8 The Arizona Supreme Court's prior precedents also strongly suggest that it would
9 take a more discriminating position. It has long supported the principle "that where
10 negligence is the proximate cause of injury, the rule is liability and immunity is the
11 exception." *Stone v. Ariz. Highway Comm'n*, 93 Ariz. 384, 392, 381 P.2d 107, 112
12 (1963). It has "endorsed the use of governmental 'immunity as a defense only when its
13 application is necessary to avoid a severe hampering of a governmental function or
14 thwarting of established public policy.'" *Chamberlain v. Mathis*, 151 Ariz. 551, 558, 729
15 P.2d 905, 912 (1986) (citing *Ryan v. State*, 134 Ariz. 308, 311, 656 P.2d 597, 600
16 (1982)). It has held that "absolute immunity for public officials in their discretionary
17 functions acting in other than true judicial proceedings is not required and, indeed, is
18 improper." *Grimm v. Ariz. Bd. of Pardons & Paroles*, 115 Ariz. 260, 265, 564 P.2d 1227,
19 1232 (1977). With respect to court officials performing functions in judicial proceedings,
20 it has "narrowly construed the requirement that the act raising the privilege have a close,
21 direct relationship to such proceedings." *Chamberlain*, 151 Ariz. at 558, 729 P.2d at 912
22 (citing *Green Acres Trust v. London*, 141 Ariz. 609, 614, 688 P.2d 617, 622 (1984)).

23 In light of this evidence, it is unlikely that the supreme court would accord
24 absolute immunity to a probation officer who was grossly negligent when routinely
25 investigating a probation violation and who requested an arrest warrant in a petition to
26 revoke probation. In that role, probation officers have the authority of police officers and
27 the power to precipitate pre-hearing deprivations of liberty without the safeguard of
28 adversarial judicial proceedings. Arizona probation officers are employed by the

1  judiciary, but Arizona law specifically provides that a probation officer "has the authority
2  of a peace officer in the performance of the officer's duties." A.R.S. § 12-253(3). The
3  Arizona Supreme Court has "refused to extend absolute immunity to police officers."
4  *Chamberlain*, 151 Ariz. at 557, 729 P.2d at 911 (citing *Portonova v. Wilkinson*, 128 Ariz.
5  501, 503, 627 P.2d 232, 234 (1981)). As discussed above, the great weight of federal
6  authority is that probation and parole officers seeking arrest warrants in petitions to
7  revoke probation function like police officers, not prosecutors, and receive only qualified
8  immunity. In *Acevedo*, the Arizona Supreme Court cited two such cases that "ruled that
9  probation officers do not have absolute immunity for the damages caused by reports filed
10 to revoke probation or parole." 142 Ariz. at 321, 690 P.2d at 40 (citing *Galvan v.*
11 *Garmon*, 710 F.2d 214 (5th Cir. 1983); *Ray v. Pickett*, 734 F.2d 370 (8th Cir. 1984)). The
12 judge's initial review of a petition is not sufficient to hold probation officers accountable
13 for their actions. *See Adams*, 185 Ariz. at 446, 916 P.2d at 1162 (finding it significant
14 that the judge decides based on a one-sided version of the facts); *accord Gelatt*, 811 F.
15 Supp. at 67; *Babcock v. Washington*, 116 Wash. 2d 596, 610, 809 P.2d 143, 151 (1991).

16      Probation officers' investigative and petitioning duties are often more executive or
17 administrative in nature than judicial. The Arizona Supreme Court's decision in *Acevedo*,
18 its previous decisions denying absolute immunity, the federal case law upon which it has
19 relied, the reasoning of another Arizona Court of Appeals panel, and the Arizona statute
20 defining probation officers' powers all evidence that the supreme court would not adopt
21 the absolute immunity that *Desilva* supports. It is also of some significance that the
22 supreme court had no opportunity pass on *Desilva* because no petition for review was
23 filed. Spier is not absolutely immune from Davis's claim that she was grossly negligent
24 when investigating the charges against him and requesting his arrest in the petition to
25 revoke probation.

26      IT IS THEREFORE ORDERED that all claims for damages under 42 U.S.C. §
27 1983 against Defendant State of Arizona and against Defendant Gretchen Spier in her
28 official capacity are dismissed with prejudice.

1  IT IS FURTHER ORDERED that Defendant Gretchen Spier's motion to dismiss
2  based on absolute immunity is denied with respect to the claims against her in her
3  individual capacity under 42 U.S.C. § 1983 and under Arizona law.
4  DATED this 14th day of April, 2008.

_____
Neil V. Wake
United States District Judge